JOHN C. ALLEN, APPELLEE, V. OMAHA & SOUTHERN INTER-URBAN RAILWAY COMPANY, APPELLANT.

FILED FEBRUARY 14, 1927. . No. 24584.

1. **Railroads:** CROSSINGS: DUTY OF TRAVELER. "It is the duty of a traveler on a highway, when approaching a railroad crossing, to look and listen for the approach of trains. He must look, where, by looking, he could see, and listen, where, by listening, he could hear; and if he fails without reasonable excuse to exercise such precautions he is guilty of negligence." *Askey v. Chicago, B. & Q. R. Co.*, 101 Neb. 266; *Haffke v. Missouri P. R. Corporation*, 110 Neb. 125.

2. **Negligence:** COMPARATIVE NEGLIGENCE. Under the facts disclosed by the record, and set out in the opinion, *held*, that the negligence of the plaintiff was more than slight, as compared with the negligence of the defendant, and precludes plaintiff from a recovery.

3. ———: ———: DIRECTION OF VERDICT. Where the facts show beyond reasonable dispute that the plaintiff's negligence was more than slight, as compared with the negligence of the defendant, it is the province of the court to direct a verdict for the defendant.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELY, JUDGE. *Reversed and dismissed.*

*John L. Webster,* for appellant.

*Stout, Rose, Wells & Martin,* contra.

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON and EBERLY, JJ.

GOSS, C. J.

This is an action to recover damages for personal in-

juries suffered by the plaintiff in a collision of his automobile with defendant's train at a crossing of the public highway and the railway tracks of the defendant.

At the conclusion of plaintiff's proofs, the defendant moved for a verdict in its favor, but did not press the motion; decision was reserved until the end of the trial, when the motion was renewed and overruled. The trial resulted in a verdict and judgment for plaintiff, and defendant appealed.

The collision occurred in the open, comparatively level, farming country within the corporate limits of Bellevue, but a considerable distance from the main collection of houses, commonly considered as that village, and on the line of the railway between Bellevue and Fort Crook. Plaintiff, a farmer then about 40 years old, residing on a farm about two miles north of Bellevue, was returning from a business errand to a point about two miles south of Fort Crook. He had gone over this route on his way; had been over it five or six times between March 1 and October 6, 1919, the date of the accident, and knew the conditions at the crossing. He knew there was no flagman and no mechanical signal. The street on which he was driving is the main highway between the village of Bellevue and Fort Crook, and it runs east and west. The railway runs slightly southwest at that point. Plaintiff had picked up a guest, whom he did not know, and they were riding east, but were not conversing.

At the north side of Twenty-fourth street and west of the tracks was a cornfield with corn 7 or 8 feet high, reaching within 30 or 35 feet of the west line of the track, and weeds, somewhat higher than the corn, were east of the cornfield up to within 12 or 15 feet of the track. There had been a mudhole in the street, the east end of which came about 30 feet from the west line of the car track. It had about dried up. The day was clear.

Plaintiff was driving a two-year old Ford touring car, equipped with winter top, but with the windows open and

his windshield clean. He testified that he had been driving about 12 to 15 miles an hour, but that, when he came to the location of the mudhole, he slowed down to 8 or 10 miles an hour, and then proceeded until the collision occurred; that heretofore he had always been afraid of this crossing and had always stopped to look; that on this occasion he looked only once for the train and that was when he was 20 or 30 feet west of the tracks, and from the point where he looked he could see 100 feet up the track; that, at the speed at which he was then moving, he could have stopped his car in 8 or 10 feet, but, after looking for the train, he started to go over the track, looking straight ahead toward the east; and that he did not see the train, nor hear the whistle. The testimony of his guest, who was riding with him, is substantially the same as that of plaintiff in respect of the conditions and failure to hear any signals or warning.

Defendant has a Nebraska charter as a commercial railway, and runs trains between South Omaha and Fort Crook at frequent intervals. The train which collided with plaintiff's car consisted of passenger car in front and the rear car for baggage, freight and express. It was moving south. Twenty-fourth street was a stopping place if there were passengers to get off or on. There were none such at the time of the accident, and the train, whose speed was about 20 to 30 miles an hour, did not intend to make a conventional stop.

The testimony of the motorman, and of various others who were on the railway passenger car, was to the effect that the regular whistles — two long and two short — were given for the Twenty-fourth street crossing, and that then a couple of short toots were given by the motorman as he was approaching Twenty-fourth street and saw plaintiff's automobile coming toward the railroad track. After the motorman discovered that plaintiff was not stopping, but was about to drive on the tracks, he tried unavailingly to stop the train. It was stopped within about 100 feet after the impact.

The charges of negligence submitted to the jury were that defendant was operating its train at excessive speed, or in a reckless manner, or without giving any warning of its approach.

There were various errors assigned, but the substantial issue is this: Is the evidence sufficient to support the verdict? If not, then the court should have sustained defendant's motion for a directed verdict.

The plaintiff testified that he looked to the north only once for an approaching train, when he was 20 or 30 feet from the track, and that he could then see up the track past the obstructive corn and weeds 100 feet. He admits that he could have stopped his car within 8 or 10 feet at his current speed. Had he looked continuously, or looked again, when within 15 feet, he could, as shown by the indubitable, physical facts in this case, have seen the oncoming train and stopped his automobile with a safe clearance. Had he listened as ordinary prudence would have dictated to one admittedly familiar enough with the crossing to know its dangers, he would have heard the signals as several witnesses heard them. "A mere glance occupying but a fraction of a second would have sufficed to warn him of the approaching train." *Haffke v. Missouri P. R. Corporation,* 110 Neb. 125.

We have repeatedly held that it is the duty of a traveler on a highway approaching a railroad crossing to look and listen for approaching trains; that he must look, where, by looking, he could see, and listen, where, by listening, he could hear; that it is the duty of one approaching in an automobile a railroad crossing with which he is familiar, where his view is obstructed until he gets within a short distance of the track, to keep his car under control and to drive at a speed which will enable him to stop in time to avoid a collision after discovering a train; and that a speed which prevents such control under the circumstances is negligence as a matter of law. *Rickert v. Union P. R. Co.,* 100 Neb. 304; *Askey v. Chicago, B. & Q. R. Co.,* 101 Neb. 266;

*Seiffert v. Hines,* 108 Neb. 62; *Stanley v. Chicago, R. I. & P. R. Co.,* 113 Neb. 280; *Haffke v. Missouri P. R. Corporation,* 110 Neb. 125; *Tyson v. Missouri P. R. Corporation,* 113 Neb. 504.

And where, as in this case, it was shown beyond reasonable dispute, by the testimony offered by plaintiff and by the circumstances surrounding the collision, that the plaintiff's negligence was more than slight as compared with that of the defendant, it was the duty of the court, under the rules laid down in *Morrison v. Scotts Bluff County,* 104 Neb. 254, to enter a judgment of dismissal.

Under the evidence, plaintiff is not entitled to recover and the trial court should have sustained the defendant's motion made at the close of the evidence. There have already been two trials of this case. The facts have been so developed and so fixed that another trial would avail plaintiff nothing. The judgment of the district court is therefore reversed, with directions to dismiss the action.

REVERSED.

