DELMAR H. HUCKFELDT, ADMINISTRATOR OF THE ESTATE OF LETA HOLLENBECK, DECEASED, APPELLANT, v. UNION PACIFIC RAILROAD COMPANY ET AL., APPELLEES.

50 N. W. 2d 110

Filed November 30, 1951. No. 33026.

*Dryden, Jensen & Dier,* for appellant.

*C. B. Matthai, G. C. Holdrege,* and *J. C. Tye,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action brought by the administrator of the estate of Leta Hollenbeck, deceased, to recover damages for her death resulting from a collision between the automobile of the deceased and a train owned by the Union Pacific Railroad Company and operated by locomotive engineer Bruce Eshom. The trial court directed a verdict for the defendants and the plaintiff appeals.

The evidence of the plaintiff as it bears upon the question of negligence on the part of the defendants consists primarily of the testimony of one Vern F. Barr. This witness testified that he was standing on the street corner in front of the First State Bank of Shelton, Nebraska, at about 3:14 a. m. on September 6, 1948, when the accident occurred. The railroad crossing was approximately 150 feet south of the corner where the witness was standing. There was a light drizzle falling and visibility was described as "not too bad." The witness testified that he could have seen the headlights of a train approaching the crossing for several miles in either direction. The witness was waiting to take a bus to North Platte when the accident happened. He testified that a few minutes before the accident he saw an automobile occupied by two persons, subsequently identified as the deceased and one Ann Wagner, approach from the east, turn south, and cross the railroad tracks. Shortly thereafter he saw a train approaching from the east and heard its whistle several times. He watched the highway to the east for the approach of the bus he intended to take, and continued to observe the approach of the train from that direction. The train was a streamliner traveling about 80 miles an hour. Its whistle was sounding and its wig-wag headlight was lit and operating. As the rear of the streamliner crossed the street at the point of the accident the witness for the first time observed a passenger train, pulled by a steam locomotive, traveling east on the track south of the track traveled by the streamliner. The steam locomotive apparently

came into the view of the witness at or near the west side of the crossing. He first identified it by some little "sparklers" that he saw at the front of the engine some four feet above the ground. He testified that he did not see the automobile of the deceased and that he did not know an accident had occurred until he heard the moans of the deceased. He then investigated and found the wrecked automobile and plaintiff's decedent, fatally injured. The witness testified that he did not see the train approaching from the west, heard no whistle or bell, and saw no headlight burning on it. He says the train came to a stop about three-quarters of a mile east of the crossing. A part of the train crew came back to the scene of the accident before the train proceeded. He testified that no more than two seconds elapsed after the streamliner cleared the crossing before the east-bound train entered the street crossing.

The engineer of the east-bound train testified that his train was traveling about 80 miles an hour as it approached Shelton. He testified that he pulled two longs and two shorts on the whistle for the crossing west of the one here involved. After passing over the west crossing he started to pull four similar blasts for the crossing where the accident happened. During the first blast his headlight disclosed an automobile standing on the track on which his train was traveling. He testified that he gave several short blasts of the whistle and applied the air-brakes. He said that the occupant of the car, later identified as plaintiff's decedent, apparently did not see or hear the train coming from the west until about the time the car passed from his view under the front of the engine. The engineer testified that he had driven locomotives for 34 years and that it was impossible to stop the train traveling at 80 miles an hour in 1,000 to 1,500 feet. He testified that the headlight on his engine was lit before and after the accident, and that the whistle and bell were working and properly operated.

The evidence of the fireman on the engine was similar to that of the engineer, he having seen the automobile on the track at the same time as the engineer by virtue of the projected rays of the headlight. The engineer on the streamliner testified that when he met the engine of the east-bound train west of the crossing the headlight was lighted and properly operating. The wrecked automobile indicated it had been struck in the middle, the front end being found farther down the track than the rear portion. In addition to the foregoing evidence concerning the contention that the east-bound train was without a lighted headlight immediately prior to the collision, the evidence of Barr was impeached by a statement over his signature that, while he thought the headlight was out, he was not certain because of the position from which he viewed the passing trains, the short time he had to make an observation, and the distance that the headlight was set to reflect objects ahead of the engine.

The evidence in this case is conclusive that the deceased drove her automobile upon the south track and stopped to permit a west-bound train to pass. While her automobile was standing squarely across the track it was struck by a fast-moving train approaching from the west. Such conduct on the part of the deceased constitutes contributory negligence more than slight under the comparative negligence statute and bars a recovery as a matter of law. It is more than slight negligence for one to stop an automobile on a railroad track without looking or listening for an approaching train. This is particularly so when the driver is familiar with the crossing and the possibility of train movements in both directions on a double track railroad. The rule applies even though the whistle was not blown, the bell not rung, or the speed of the train excessive. Lewis v. Union Pacific R. R. Co., 118 Neb. 705, 226 N. W. 318; Askey v. Chicago, B. & Q. R. R. Co., 101 Neb. 266, 162 N. W. 647; Mundt v. Chicago, R. I. & P. R. R. Co., 136

Neb. 478, 286 N. W. 691. See, also, Moreland v. Chicago & N. W. Ry. Co., 117 Neb. 456, 220 N. W. 692.

Complaint is made that the court rejected certain evidence offered by the plaintiff. No offer of proof appears to have been made. The rule is: Where on direct examination an objection to a question is interposed by the adverse party and sustained, there must be an offer of proof of the facts sought to be put in evidence by the question in order to present the ruling to the court for review. Dean v. State, 128 Neb. 466, 259 N. W. 175; Employers Mutual Casualty Co. v. Brazda, 152 Neb. 633, 42 N. W. 2d 195.

The judgment of the trial court is correct and is affirmed.

AFFIRMED.